UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALICIA WEISS,

**REPORT AND
RECOMMENDATION**

                         Plaintiff,

07-CV-1039
(LEK/VEB)

                 V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                         Defendant.

_____

## I. INTRODUCTION

In May of 2005, Plaintiff Alicia Weiss filed an application for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social

Security Act.  Plaintiff alleges that she has been unable to work since March 15, 2005,

primarily due to physical impairments, including rheumatoid arthritis.  Plaintiff's application

for benefits was denied by the Commissioner of Social Security.

Plaintiff, through her attorney, Ira Mendleson III, Esq., commenced this action on

October 2, 2007, by filing a Complaint in the United States District Court for the Northern

District of New York. (Docket No. 1).  Plaintiff seeks judicial review of the Commissioner's

denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 20, 2009, the Honorable Norman A. Mordue, Chief United States District

Judge, referred this case to the undersigned for a Report and Recommendation pursuant

to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 15).

For the reasons set forth below, this Court finds that the ALJ erred by failing to

adequately assess Plaintiff's residual functional capacity.   Accordingly, this Court recommends that this case be remanded for further consideration.

## II. BACKGROUND

Plaintiff, a forty-one (41) year old woman, applied for DIB and SSI on May 5, 2005[1], alleging that she had been unable to work since March 15, 2005. (T[2] at 10, 39-59).  The application was denied on August 18, 2005. (T at 10, 28-31).  Plaintiff filed a request for a hearing on September 7, 2005. (T at 24).  On June 6, 2007, a hearing was held in Albany, New York before Administrative Law Judge ("ALJ") Robin Arzt. (T at 182).   Plaintiff, represented by counsel, appeared and testified.  (T at186).

On June 26, 2007, ALJ Arzt issued a written decision denying Plaintiff's application for benefits.  (T at 10-17).  The ALJ's decision became the Commissioner's final decision on August 16, 2007, when the Social Security Administration's Appeals Council denied Plaintiff's request for review.  (T at 2-4).

Plaintiff commenced this action on October 2, 2007. (Docket No. 1).  Plaintiff, through counsel, filed a supporting Brief on March 31, 2008. (Docket No.12).   The Commissioner filed a Brief in opposition on May 14, 2008. (Docket No. 8).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had

---

[1]The application for disability benefits is not included in the Administrative Transcript.  However, there is no issue raised by either party as to the date of filing.

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No.5)

accompanied their briefs with a motion for judgment on the pleadings.[3]

# III. DISCUSSION

## A.     Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

---

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

---

[4]This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.    Analysis

### 1.    Commissioner's Decision

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since March 15, 2002, the alleged disability onset date.  (T at 12).  The ALJ found that Plaintiff has the following "severe" impairment: rheumatoid arthritis status after a left foot rheumatoid nodule and ligament reconstruction.  (T at 12).  However, the ALJ concluded that Plaintiff's impairment did not meet or equal the level of severity of any disabling

---

considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

condition set forth in Appendix 1 of the applicable Social Security Act Regulations (the "Regulations").  (T at 12).

After reviewing the medical evidence, the ALJ concluded that Plaintiff had the residual functional capacity to lift and carry up to ten pounds at a time, walk and stand up to two hours out of an eight hour day, occasionally push and pull light weight objects, and occasionally bend and stoop.  (T at 12).  The ALJ concluded that Plaintiff has the ability to perform sedentary work. (T at 12).

The ALJ found that Plaintiff is unable to perform her past relevant work as a registered nurse or psychiatric nurse.  (T at 16).  However, the ALJ determined that, given Plaintiff's residual functional capacity, past work experience, age, and educational background (high school education and Associate's degree), she can perform jobs that exist in significant numbers in the national economy.  (T at 16).  Therefore, the ALJ determined that Plaintiff was not under a "disability," as defined under the Act.  (T at 17).

As noted above, the ALJ's decision became the Commissioner's final decision on August 16, 2007, when the Appeals Council denied Plaintiff's request for review.  (T at 2-4).

**2.      Plaintiff's Claims**

Plaintiff contends that the Commissioner's decision should be reversed.  She offers principal arguments in support of her position.  First, Plaintiff asserts that the ALJ erred by finding that she has the residual functional capacity to perform sedentary work.  Second, Plaintiff argues that the ALJ did not give sufficient weight to the opinions of her treating physicians.  Third, she contends that failed to properly assess her subjective testimony regarding pain and disabling symptoms.  Fourth and finally, Plaintiff argues that the ALJ should have elicited the testimony of a vocational expert.

**a.      Residual Functional Capacity**

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).

In this case, the ALJ determined that Plaintiff retained the RFC to perform sedentary work.  (T at 16).  Sedentary work "is defined as involving only occasional standing and walking, the lifting of no more than ten pounds at a time, and the occasional lifting and

carrying of light objects." <u>Schaal v. Apfel</u>, 134 F.3d 496, 501 n. 6 (2d Cir. 1998); <u>see</u> <u>also</u> 20 C.F.R. § 404.1567. "Sedentary work also generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday." <u>Perez v. Chater</u>, 77 F.3d 41, 46 (2d Cir.1996) ("Sedentary work also generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday").

Under this standard, if Plaintiff could not sit for six hours in an eight-hour workday, her ability to perform a full range of sedentary work would have been eroded. Dr. John French, Plaintiff's treating physician and a rheumatologist, opined that Plaintiff could only sit for fifteen (15) minutes in an eight (8) hour workday and would be required to change positions often at irregular intervals to relieve pain. (T at 161). Dr. French's assessment was that Plaintiff could not work a full eight-hour day. (T at 161). Plaintiff testified that she was able to drive for approximately forty-five (45) minutes at a time (T at 187), but was generally limited to sitting for about fifteen (15) minutes. (T at 196). This appears, at least on its face, somewhat contradictory. As discussed below, this apparent inconsistency merits further exploration.

In any event, however, the record (consisting of the opinion of Plaintiff's treating physician and her own testimony) indicated that Plaintiff had significant limitations with regard to her ability to sit for extended periods of time. In the face of this evidence, the ALJ concluded that Plaintiff nonetheless retained the RFC to perform sedentary work. In light of that conclusion, one would expect a detailed discussion concerning Plaintiff's ability to sit for prolonged periods. The ALJ's decision contains no such discussion. The Commissioner essentially concedes that the ALJ failed to specifically address this issue (Docket No. 12, at p. 12), but suggests that this Court should search the record for

supporting evidence.  However, "a reviewing court, in dealing with a determination of judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." SEC v. Chenery Corp., 332 U.S. 194, 196 (1947).  Moreover, the agency had its own opportunity to search and/or develop the record for such supporting evidence, but failed to do so.  Presumably, if there was an indication in the medical record supportive of the ALJ's finding that Plaintiff could sit for six hours in an eight hour day, the Commissioner would have pointed to such evidence.  Further, search of the record by this Court also revealed no such supporting evidence.  As discussed further below, it simply appears that this aspect of the ALJ's determination is unsupported by the medical record.

Therefore, the ALJ's failure to explain and support her finding with respect to Plaintiff's ability to sit for prolonged periods cannot be considered harmless error and is cause for remand.  This is especially the case where, as here, the ALJ's finding contradicted the assessment of the claimant's treating physician.  Snell v. Apfel, 177 F.3d 128, 133 (2d Cir.1999) ("Failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand"); cf. Conway v. Barnhart, No. 00 Civ. 8148, 2002 WL 31478192, at *4 (S.D.N.Y. Nov.6, 2002) (holding that remand was proper "when there is a question as to how the ALJ applied legal standards, such as determining what controlling weight was given to a treating physician's conclusions and diagnosis" (citing Rosa v. Callahan, 168 F.3d 72, 79-81 (2d Cir.1999)).

Dr. Balagtas, the consultative examiner, noted that Plaintiff would have "some limitations" with regard to prolonged standing and walking, but made no findings with regard to her ability to sit for extended periods. (T at 151).  Although the non-examining State

9

Agency analyst and physician concluded that Plaintiff could sit for about six (6) hours in an eight (8) work day (T at 152, 154), these findings were not supported by any citation to the medical records and are directly contradicted by the assessment of Plaintiff's treating physician.   In light of the foregoing, the assessments of the non-examining State Agency personnel cannot be considered substantial evidence sufficient to support the ALJ's determination.  See Griffith v. Astrue, 08-CV-6004, 2009 WL 909630 at *9 (W.D.N.Y. July 27, 2009) ("The State Agency Officials' reports, which are conclusory, stale, and based on an incomplete medical record, are not substantial evidence"); see also McClean v. Astrue, 04-CV-1425, 2009 WL 1918397, at *4 n.2 (E.D.N.Y. June 30, 2009).\

Accordingly, it is recommended that this case be remanded for a further determination by the Commissioner concerning Plaintiff's RFC, with particular attention to be given to Plaintiff's capacity to sit for prolonged periods.

### b.    Treating Physician's Assessment

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician"s opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[5]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this

---

[5]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998).

Here, the records of Dr. French, Plaintiff's treating rheumatologist, indicated that she was diagnosed with sero-positive rheumatoid arthritis in May 2003.  (T at 129).  In March 2005, she underwent surgery to remove a rhmeumatoid nodule between two of her toes. (T at 144).  In a post-operative visit, Dr. French noted that Plaintiff was "doing well," although she had "some right hip discomfort, which [was] a bit more obvious than in the past." (T at 121).  In May 2005, Plaintiff was noted to be taking nine (9) medications as prescribed by Dr. French and continued to report right hip discomfort. (T at 119).  Dr. French noted that Plaintiff's range of motion was "actually reasonably preserved." (T at 119).

As noted above, Dr. French concluded that Plaintiff could not sit for an extended period and would be unable to work a full eight-hour day. (T at 161).  The ALJ gave "little weight" to this assessment, finding that it was unsupported by Dr. French's clinical findings. (T at 15).  However, Dr. French's clinical examinations generally related to Plaintiff's rheumatoid arthritis and to her post-operative recovery from foot surgery.  The ALJ noted the "mild clinical findings" made by Dr. French and other treating/examining physicians. (T at 15).  Those findings related to Plaintiff's overall condition and range of motion, rather

11

than her ability to sit for extended durations.

Further, "a treating physician's failure to include objective support for the findings in his report does not mean that such support does not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case." Fox v. Astrue, 05-CV-1599, 2008 WL 828078, at *8 (N.D.N.Y. Mar. 26, 2008) (citing Rosa v. Callahan, 168 F.3d 72, 80 (2d Cir. 1999)).

Under the circumstances and especially given that the ability to sit is a critical component of sedentary work, the ALJ was obligated to re-contact Dr. French to obtain an explanation regarding his assessment of Plaintiff's ability to sit for a prolonged period and perhaps to explain further the apparent inconsistency regarding the length of time Plaintiff is able to sit. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence"). Accordingly, on remand, the ALJ should seek out further information from Dr. French concerning his assessment of Plaintiff's RFC, particularly with regard to her ability to sit for an extended duration.

### c.    Consideration of Plaintiff's Credibility

"It is well settled that 'a claimant's subjective evidence of pain is entitled to great weight' where ... it is supported by objective medical evidence.'"Simmons v. United States R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir.1992) (quoting Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir.1983) (citations omitted)). Where, as here, an ALJ rejects subjective testimony concerning pain, the ALJ "must do so explicitly and with sufficient specificity to

enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." <u>Brandon v. Bowen</u>, 666 F.Supp. 604, 608 (S.D.N.Y.1987); <u>see</u> <u>Valente v. Secretary of HHS</u>, 733 F.2d 1037 (2d Cir.1984).

As noted above, Plaintiff testified that she was limited to sitting for about fifteen (15) minutes. (T at 196).  The Commissioner correctly notes that this testimony was, in part, contradicted by Plaintiff's statement that she was able to drive for approximately forty-five (45) minutes at a time (T at 187).  However, while this apparent inconsistency is curious and should be addressed on remand, nothing in Plaintiff's testimony suggested that she would be able to sit for six hours in an eight hour workday, as required to perform sedentary work.

The Commissioner also suggests that Plaintiff's activities of daily living were inconsistent with her complaints of pain.  For example, Plaintiff testified that she performed light household chores and cared for her children. (T at 194-96).  However, none of the activities described by Plaintiff evidenced an ability to sit for extended periods of time.  Further, "[s]uch activities do not by themselves contradict allegations of disability," as people should not be penalized for enduring the pain of their disability in order to care for themselves." <u>Woodford v. Apfel</u>, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000); <u>see</u> <u>also</u> <u>Balsamo v. Chater</u>, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act.").

Plaintiff's testimony with respect to her limitations as to sitting was supported by the assessment of her treating physician.  In finding that Plaintiff retained the RFC to perform

13

sedentary work, the ALJ implicitly rejected Plaintiff's testimony and her treating physician's opinion regarding her ability to sit for prolonged periods. The ALJ's decision is lacking in sufficiently specific reasoning justifying this finding. As such, this Court cannot determine whether the ALJ's finding is supported by substantial evidence and a remand is required for further review in this regard.

### d.   Failure to Consult a Vocational Expert

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). In this, and other social security cases, the second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of a claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

Sitting is considered as an exertional impairment under the Act and, as noted above, "[i]n order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." SSR 96-9p; SSR 83-10.

"If an individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded." SSR 96-9p. "The extent of the limitation should be considered in determining whether the individual has the ability to make an adjustment to other work." Id. For some claimants, by way of example, alternate sitting and standing may be an option to address a limitation in this regard. Id. "The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." Id. "It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work." In the present case, the ALJ's decision is devoid of any such assessment. Given the lack of support for the ALJ's conclusory finding that Plaintiff could sit for six hours in an eight hour work day, this gap in the record is critical and should be remedied by

15

remand.

On remand, the ALJ should consider whether Plaintiff perform all, or almost all, of the exertional demands of sedentary work, including (in particular) the demands of sitting. If not, a clear analysis of Plaintiff''s limitations and the impact on her ability to do work is required.  Further, the ALJ must determine whether Plaintiff would need a sit/stand option or some other limitation to the jobs usually available at the sedentary level of exertion.  (If yes, the base of potential jobs may be very limited.)  After addressing these questions, the services of a vocational expert may very well be necessary to determine the impact of Plaintiff's limitations on available work and the erosion of the occupational base available to Plaintiff because of her limitations.


### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  In this case, for the reasons set forth above, due to the significant gaps in the record, particularly with regard to Plaintiff's ability to sit for extended periods, this Court concludes that further findings would help ensure the proper disposition of Plaintiff's claim.  Accordingly, a "sentence four" remand is recommended.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be DENIED, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   August 12, 2009

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report &**

17

Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

 August 12, 2009

Victor E. Bianchini
United States Magistrate Judge